## TALLMAN v. SEYMOUR.

1. PARTNERSHIP—FRAUD—ONE NOT A PARTNER NOT LIABLE FOR FRAUD OF FIRM.

In an action based on the alleged fraud of a brokerage firm in purchasing stocks for plaintiff, where the proofs show that the transactions complained of were completed before defendant became a member of the firm, and there is no proof that he profited thereby, the trial court properly directed a verdict in his favor.

2. CONSPIRACY—MERE FAILURE TO IMPART SUSPICIONS OF FRAUD DOES NOT RENDER ONE GUILTY OF CONSPIRACY.

That defendant did not notify plaintiff of his suspicions that no such purchase of stock was made as plaintiff had ordered, did not render him guilty of conspiracy to defraud plaintiff, especially in view of the relations between plaintiff and another defendant who personally handled plaintiff's business and was guilty of the fraud.

3. CORPORATIONS—STOCKHOLDER NOT LIABLE FOR FRAUD OF FORMER BROKERAGE FIRM.

A stockholder in a corporation which took over a brokerage business is not liable for the fraud of a member of the firm in purchasing stocks for plaintiff prior to the

¹Partnership, 30 Cyc. p. 614; ²Conspiracy, § 178 (Anno); ³Corporations, 14 C. J. § 368.

organization of the corporation, since the latter, by taking over the business, did not assume liability for said fraud.

Error to Wayne; Marschner (Adolph F.), J. Submitted October 22, 1926. (Docket No. 60.) Decided December 8, 1926. Rehearing denied February 4, 1927.

Case by Frank G. Tallman, Jr., against Dwight L. Seymour, Robert T. Perry, and Carl W. Bonbright for fraud. Judgment for plaintiff against defendant Seymour and for defendants Perry and Bonbright on a directed verdict. Plaintiff brings error. Affirmed.

*Lightner, Oxtoby, Hanley & Crawford,* for appellant.

*Roy E. Brownell* (*George A. Kelley,* of counsel), for .appellees.

SHARPE, J. The plaintiff is now a resident of New Jersey. In 1919, and until December, 1920, he resided in the city of Flint. It is his claim, as set forth in his declaration, that the defendants Seymour and Perry were in those years engaged in business as copartners under the firm name of D. L. Seymour & Company, and as such operated a brokerage business in said city until about June, 1920, when the name of the firm was changed to Perry-Seymour & Company; that in the latter part of 1920 the defendant Bonbright became a member of the firm, the same continuing without change of name. He further alleges that during the spring of 1920 he had certain transactions with D. L. Seymour & Company, as a result of which, on or about June 1st, he had a credit with them in the sum of $30,000; that at that time he instructed the firm to purchase for him stock in the General Motors Company and in the Invincible Oil Company; that he was advised from time to time of such purchases,

until the total thereof was 1,500 shares of General Motors and 200 shares of the oil stock, the average cost of the former being about $25 per share and of the latter about $46 per share; that soon thereafter a stock dividend of 58 shares on the 1,500 shares was declared, and that he was advised that the company held this for him in addition to the 1,500 shares; that in January, 1921, after he had removed to New Jersey, he requested the company to transfer his General Motors stock to his agents in New York, and to sell his oil stock; that they complied by sending him 1,558 shares of General Motors stock and soon after advised him that they had sold his oil stock at $20⅝ per share, and had credited the proceeds to his account.

He further alleges that the company used the $30,000 in their hands to his credit for the purpose of satisfying in part an indebtedness owed by them to E. E. McCrone & Company, a brokerage firm in Detroit; that the company did not purchase either the General Motors stock or the oil stock for him as they had reported to him they had done, but when he asked for the transfer and sale of his stock they purchased shares on the market at a greatly reduced price and forwarded to and sold such stock for him; that by reason of such acts on the part of Seymour and Perry he was defrauded by them in the difference between the price represented as having been paid for said stock and that actually paid therefor, and that the defendant Bonbright was then a member of the firm and a •party to such fraud and participated in the fruits thereof.

The defendant Seymour, while he appeared and pleaded, was not present or represented at the trial. A verdict was directed against him in the sum of $30,122.59, and judgment entered thereon. The trial court found that there was no proof of liability on the part of Perry or Bonbright, and granted the motion

of their counsel for a directed verdict. The plaintiff reviews the judgment entered thereon by writ of error.

1. Partnership. There is no proof from which even an inference can be drawn that Perry was a partner of Seymour in July, 1920, when plaintiff gave his orders for the purchase of the stock. The record discloses that in December, 1920, Seymour and Perry planned to organize a Michigan corporation bearing the name of Perry, Seymour & Company. In anticipation of such action, Perry prepared a booklet, announcing such organization and its facilities to handle brokerage business, and had it printed. He testified that on the assurance of Seymour "that the corporation would probably be formed within two or three days," and at his suggestion, he caused a few of the books to be distributed and one of them reached the plaintiff. The corporation was not organized, and the Flint business continued in the name of D. L. Seymour & Company until March 19, 1921, ten days after plaintiff's motor stock had been sent to New York and his oil stock sold, when the Delaware corporation of Perry, Seymour, Bonbright & Company was organized. There is no proof that Perry in any way participated in the profits which Seymour & Company reaped as a result of the transaction.

2. Conspiracy. Counsel for the plaintiff urge that even if not a partner Perry was a joint conspirator with Seymour in defrauding him in the manner stated. It appeared that some sheets from a loose leaf book kept by the firm in its Flint office had been abstracted therefrom by one of its employees. Plaintiff's counsel produced what was claimed to be these missing sheets and sought to have them admitted in evidence. Much of the record is taken up with proof of their identity. If we treat them as admitted, they but establish what we think was otherwise sufficiently

proven, that is, that plaintiff's money was not used in the purchase of stock and that the books kept in Flint showed that plaintiff's purchase was in what was called a trading account. Plaintiff had had dealings with Seymour in 1919, and at the time of his proposed purchase held Seymour's note for $24,000, for which a judgment was afterwards obtained. Perry testified that he did not wire an order to McCrone & Company to purchase plaintiff's stock as he did other orders received. He explains his action in this respect by saying:

"Very few of Mr. Tallman's executions went over our wire, because Mr. Tallman's account was always in the hands of D. L. Seymour."

He telephoned plaintiff's order to Seymour & Company, and a letter of confirmation was sent to plaintiff from the Detroit office. While Perry may have had reason to suspect that no such purchase was made, we think it would be going far to say that, by not informing plaintiff of his suspicions, in view of the manner in which the account was kept and the relations he had a right to suppose existed between plaintiff and Seymour, he became a joint conspirator with the latter and chargeable with the fraud committed upon plaintiff. The books kept at the Flint office were taken to Detroit at Seymour's request, and plaintiff was unable to secure them as evidence. There is nothing to indicate that either of the other defendants are in any way to blame for the failure of Seymour to appear at the trial.

3. Liability of Bonbright. The record is barren of any evidence connecting Mr. Bonbright with the fraud practiced upon plaintiff. He was about the office at times familiarizing himself with the business before the organization of the corporation on March 19, 1921. Liability is predicated upon his answers to the following questions:

"*Q.* Well, did the corporation Perry Seymour-Bonbright Company take over the business of the D. L. Seymour Company, or the business of Seymour-Perry Company?

"*A.* I suppose what they took over was the list of clients of the Perry-Seymour Company, which the Perry-Seymour Company had in Flint, and the stocks and the money that those clients may have owed, or the company may have owed the clients, and just those things, distinct from anything else.

"*Q.* I guess you did not get my question. No, you have answered it partly. Did you buy the business of D. L. Seymour & Company, or did you buy the business of the Perry-Seymour Company?

"*A.* We did not buy the business of either one.

"*Q.* Did you take over the business of the Perry-Seymour Company, or the business of D. L. Seymour Company?

"*A.* Neither one. We took over that part of the business of the Perry-Seymour Company which I have indicated."

Whatever the corporation took over, it is certain that it did not assume liability for the fraudulent conduct of Seymour in his dealings with plaintiff, all of which had been concluded ten days before the corporation was organized.

We find no error in the action of the trial court in directing a verdict and entering judgment in favor of the defendants Perry and Bonbright.

The judgment as to them is affirmed.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.